UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO. 07-80633-CIV-MARRA/JOHNSON

GULF COAST PRODUCE, INC.,

    Plaintiff,

vs.

AMERICAN GROWERS, INC., and GLENN C. THOMASON,

    Defendants.

## AMENDED ORDER AND OPINION ON MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court upon Plaintiff's Motion For Summary Judgment [DE 86]. The motion is fully briefed and ripe for review. The Court has carefully considered the relevant filings, oral argument of counsel, and is otherwise fully advised in the premises.

### Introduction

Plaintiff Gulf Coast Produce, Inc. ("Gulf Coast" or "Plaintiff") is a grower's agent that markets and sells wholesale quantities of strawberries. Defendant American Growers, Inc. ("American Growers") is a dealer and commission merchant whose business consists of buying and reselling fruit and vegetables. Defendant, Glenn C. Thomason ("Thomason") is the President and

Chief Executive Officer of American Growers (together, "Defendants"). Glenn Thomason alone controlled the assets of American Growers. [1]

On or about July 17, 2007, Plaintiff commenced this action against Defendants seeking to enforce payment from the statutory trust imposed by the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499e(c)(2). Plaintiff sought injunctive relief enjoining and restraining Defendants from violating the provisions of PACA and from dissipating assets subject to the PACA trust. [DE 3]. American Growers counterclaimed for breach of contract, unjust enrichment, and promissory estoppel [DE 44]. On August 1, 2007, an evidentiary hearing was conducted, and Plaintiff's motion seeking injunctive relief was denied based upon evidence of the financial solvency of Defendant American Growers, Inc. [DE 22].

On March 23, 2009, Plaintiff filed a Renewed Motion for Preliminary Injunction [DE 95], and another evidentiary hearing was conducted on August 28, 2009. On September 9, 2009, the Court granted the motion and American Growers was required, among other things, to pay all funds belonging to it on deposit at all banking institutions, up to $742,265.75, to "AMERICAN GROWERS, INC. PACA Escrow Account" c/o Meuers Law Firm, 5395 Park Central Court, Naples, FL 34109, attorneys for Plaintiff. *See* DE 152. Subsequently, the Court

---

[1] American Growers Response to Interrogatories 3, 4 and 5; Batchelor Deposition 7:16-:21; Complaint ¶3b; Answer ¶3.

granted the motions to intervene of Pero Vegetable Company and Pioneer Growers Cooperative [DE 167]. The instant motion seeks an Order granting summary judgment in Gulf Coast's favor with respect to Counts I, II, IV, V and VI of its Complaint, and Counts I and III of the Amended Counterclaim.

**Undisputed Material Facts** [2]

Between December 31, 2006 and February 25, 2007, Gulf Coast sold 25 loads of strawberries to American Growers, and issued invoices to American Growers totaling $439,915.00. None of these invoices have been paid. [3]

Typically, when Gulf Coast's Sales Manager Steve Machell negotiated a deal, the basic terms, such as price and quantity, were agreed to verbally. Either later that day or the following morning, the buyer's truck arrived at the Gulf Coast facility and the agreed amount of strawberries were loaded. [4]

Gulf Coast furnishes the driver with a Bill of Lading, which states in pertinent part:[5]

---

[2] Most of the following facts come from Gulf Coast's statement of undisputed facts. Because these facts are supported by evidence in the record and are uncontroverted by Defendants' statement, they are deemed admitted by Defendants. S.D. Fla. L.R. 7.5D

[3] Machell Decl. 9; Plaintiff's Rule 26 Disclosures; Plaintiff's Response to Request for Production.

[4] Machell Testimony at 8/1/07 Preliminary Injunction Hearing (PI Hearing) 10.

[5] Machell Testimony (PI Hearing) 19.

> This passing serves as written confirmation unless Gulf Coast Produce, Inc., is notified in writing . . . of a discrepancy within 72 hours of shipment. No adjustment or deduction will be accepted without approval. Upon approval, you will receive a new passing. Without a new passing, no deduction will be honored.

Within a day of loading the strawberries, Gulf Coast generates a passing, which is sent by fax to the buyer.[6] The passing identifies, among other things, price and quantity shipped, and states:

> Trouble notification and settlements of same must be in writing. All sales F.O.B.[7] no grade contract. Good delivery standards apply. This B.O.L. will serve as written confirmation unless Gulf Coast Produce, Inc., is (notified in writing) of a discrepancy within 72 hours of shipment.

In the sales from Gulf Coast to American Growers, Kent Batchelor ("Batchelor") received the passings by fax, and confirmed the accuracy of price and quantity on each.[8] The following day, an invoice was issued by Gulf Coast, and was mailed to American Growers' main office.[9] The invoice includes an identification of the commodity sold, the date of the sale, the quantity, and

---

[6] Machell Testimony (PI Hearing) 10-11.

[7] FOB or Free on Board is a mercantile-contract term allocating the rights and duties of the buyer and seller of goods with respect to delivery, payment, and risk of loss. Black's Law Dictionary 690 (8th ed. 2004).

[8] Batchelor Depo. 40, 42, 44.

[9] Batchelor Depo. 49.

any other terms of the agreement. The payment terms of the invoices are "Net 10 Day," and include the following language:[10]

> . . . 18% annual interest rate added on all accounts past due over 30 days. The perishable agricultural commodities listed on this invoice are sold subject to the statutory trust authorized by section 5c of the Perishable Agricultural Commodities Act, 1930 (7 U.S.C. 499e). The seller of these commodities retains a trust claim over these commodities, all inventories of food or other products derived from these commodities, and any receivables or proceeds from the sale of these commodities until full payment is received. . .

After the strawberries arrive at the buyer's destination, Gulf Coast generates a confirmation of sale. The confirmation of sale states

> This fax of price and quantity will serve as written confirmation.
>
> * * **
>
> Please review the following information. This is a confirmation of final arrival and acceptance of load and sale price.

The confirmation of sale identifies the quantity and price and asks the buyer to sign and return the document to Gulf Coast. This allows Gulf Coast and the buyer to adjust the price or quantity if needed, and avoids the uncertainties of verbal dealings.[11] American Growers' customers would notify Batchelor if there were problems with the quality of the strawberries received, and Batchelor did not sign the confirmation of sale until after he had confirmed that the strawberries had been delivered to American Growers' customer in

---

[10] Machell Testimony (PI Hearing) 23-24.

[11] Machell Testimony (PI Hearing) 11-12; Machell Depo. 43, 122; Batchelor Depo. 46-47.

good condition.[12] American Growers received all shipments of berries at issue in this case, and all arrived in good condition free of defects.[13]

American Growers received a confirmation of sale on every load from Gulf Coast during the 2006-2007 season. Each sale was independently negotiated, and Batchelor signed and faxed to Gulf Coast a confirmation of sale on each load.[14] Batchelor knew that the purpose of the confirmation document was for Gulf Coast to confirm arrival and acceptance by American Growers of the load, as well as the parties' agreement on price.[15]

When there was an error on any of the documents furnished by Gulf Coast to American Growers, Batchelor would write the change on the document and fax it back to Gulf Coast. Batchelor did this on one of the invoices that is at issue in this case.[16] Any adjustments made by Gulf Coast to the price or quantity were done in writing.[17] After American Growers learned that Gulf

---

[12] Batchelor Depo. 43, 47.

[13] Thomason Testimony (PI Hearing) 53; American Growers Response to Plaintiff's Request for Admission # 7.

[14] Batchelor Depo. 39-40, 48-49; Thomason Depo. 102-105; Machell Testimony (PI Hearing) 20; Machell Depo. 63-64.

[15] Batchelor Depo. 38, 51.

[16] Batchelor Depo. 46, 50-51; Machell Testimony (PI Hearing) 18.

[17] Machell Depo. 43-44.

Coast had sold berries to another customer for less than the prices invoiced to American Growers, it continued to purchase strawberries from Gulf Coast and continued to sign the confirmations of sale.[18]

On March 1, 2007, Steve Machell sent an email to Glenn Thomason seeking payment in the amount of $439,915.00 for strawberries sold to American Growers.[19] Glenn Thomason sent a response on March 5, 2007, voicing his dissatisfaction with the relationship between American Growers and Gulf Coast.[20] American Growers first objected to Gulf Coast's prices for strawberries after it stopped buying from Gulf Coast in late February, 2007.[21]

Standard of Review

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); Fed.R.Civ.P. 56. All evidence and all factual inferences reasonably drawn from the evidence are viewed in the light most favorable to the

---

[18] Batchelor Depo. 57-58.

[19] Plaintiff's Rule 26 Disclosures; Defendants' Response to Requests for Production.

[20] Machell Depo. 93-95.

[21] Machell Testimony (PI Hearing) 20, 22-23; Thomason Testimony (PI Hearing) 55

nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997). Judgment in favor of a party is proper where there is no legally sufficient evidentiary basis for a reasonable jury to find for the nonmoving party on the issue before the Court. Fed.R.Civ.P. 56.

Discussion

Gulf Coast moves for summary judgment in its favor with respect to Counts I, II, IV, V and VI of its Complaint, and Counts I and III of Defendants' Amended Counterclaim. Count I of the Complaint seeks a declaration that Plaintiff is a PACA trust beneficiary of American Growers with a valid PACA trust claim in the amount of $439,915.00, plus interest from the date each invoice became past due. Count II seeks enforcement of payment from PACA Trust Assets against American Growers. Count IV seeks an Order directing American Growers to immediately pay Gulf Coast $439,915.00, plus interest from the date each invoice became past due. Count V seeks an Order entering judgment in favor of Plaintiff and against Defendants in the amount of $439,915.00, plus interest from the date each invoice became past due. Count VI asserts a Breach of Fiduciary Duty claim against Glenn Thomason also arising under PACA.  Plaintiff also seeks its costs, attorneys' fees and punitive damages. As to Defendant's counterclaims, Plaintiff moves for summary judgment in its favor with respect to Count I which seeks enforcement of a

verbal agreement for the purchase of strawberries, and Count III which seeks damages based upon a theory of promissory estoppel.

The Counterclaims

According to Defendants, all business, including commitments and price, was conducted verbally over the telephone. These agreements included a maximum or "lid price of $12.50 for strawberries from approximately the second week of January 2007 through approximately the end of February." DE 108, ¶ 15. Another alleged oral understanding is that American Growers "banked" or paid a premium to Gulf Coast for strawberries during the 2006-2007 season in exchange for Gulf Coast's promise to provide American Growers with an agreed-upon quantity of strawberries at the price mandated by American Growers' respective commitments with its customers. DE 108, ¶ 16.

In their counterclaim, Defendants vaguely assert that Gulf Coast agreed to provide it with a "certain amount" of strawberries at a "pre-determined" price. Am. Counterclaim ¶ 5. In consideration for this agreement, American Growers claims that it overpaid for strawberries between December 15, 2006 and January 15, 2007. *Id.* ¶ 6. American Growers claims that Gulf Coast did not honor this agreement to provide it with strawberries at the agreed upon prices and instead charged it higher prices. *Id.* ¶ 7. The Amended Counterclaim does not provide any specific quantities, dates or price terms for the purported oral agreement.

Statute of Frauds and the Merchant Exception

Since the parties entered into a contract for the sale of goods, Florida Statute 672.201, the Statute of Frauds provided for in Article 2 of the UCC, is controlling. *Wharfside at Boca Pointe, Inc. v. Superior Bank*, 741 So.2d 542, 545 (Fla. Dist. Ct. App. 1999) (citing *United of Omaha Life Ins. Co. v. Nob Hill Assocs.*, 450 So.2d 536 (Fla. Dist. Ct. App. 1984)). Florida's Statute of Frauds provides that verbal agreements for the sale of goods for more than $500 are unenforceable unless the parties are merchants and a written memorandum is sent within a reasonable time that contains the essential terms of an enforceable contract, including quantity (the "merchant exception"). In this case, we have invoices sent by Gulf Coast and signed by American Growers that memorialize the parties agreement including quantity and price. American Growers seeks to be relieved of its obligations under the signed invoices based upon the merchant exception where it contends that Gulf Coast orally agreed to provide some unidentified amount of strawberries to American Growers at prices mandated by American Growers' respective commitment to its customers.

Without a quantity term, any oral contract modifying a signed contract is unenforceable. *Office Pavilion South Florida, Inc. v. ASAL Products, Inc.*, 849 So.2d 367, 371 (Fla. Dist. Ct. App. 2003) (citing *Merritt-Campbell, Inc. v. RxP Products, Inc.*, 164 F.3d 957, 962 (5th Cir. 1999)) ("[T]he only term that must appear in a writing to support an enforceable contract for the sale of goods is

the quantity term"). Without evidence demonstrating the quantity terms allegedly agreed to, the merchant exception is unavailable.

American Growers argues the Statute of Frauds is inapplicable because the agreement between the parties was for "access" to strawberries, not for the sale of goods. That argument is rejected. Defendants next assert that e-mails exchanged between Steve Machell and Thomason "demonstrate the oral agreement between the parties." To the extent this argument attempts to demonstrate a writing under the "merchant exception" to the Statute of Frauds, the argument is also rejected.

"Under § 672.201, an oral agreement to sell more than $500 of goods is enforceable if the agreement is evidenced by a writing which (1) evidences a contract for the sale of goods; (2) is signed by the party to be charged and (3) specifies a quantity." *Topp, Inc. v. Uniden American Corp.*, 483 F. Supp. 2d 1187, 1214 (S.D. Fla. 2007) citing *Office Pavilion South Florida*, 849 So.2d at 371. In addition, the writing must be received within a reasonable time after the verbal agreement. Fla. Stat. § 672.201(2).

Defendants argue that two specific e-mails demonstrate the elements necessary to allow this Court to apply the merchant exception and find that the written contracts have been modified. These e-mails neither evidence a contract nor specify a quantity. In addition, it cannot be said that the e-mails were sent within a reasonable time.

On March 1, 2007, Steve Machell sent an e-mail to American Growers. Defendants argue that the words, "I have you lined up for 1 load per day as a standard pull," confirms Gulf Coast's agreement to provide American Growers at least one load of strawberries per day for the season. Defendants quote an incomplete phrase. The complete sentence reads, "I have you lined up for 1 load per day as a standard pull, and now there is no pull ??" DE 108 at 19, Ex. 1. Construing this communication in the light most favorable to Defendants, it relates to negotiations as to future sales and cannot, as a matter of law, change the contractual arrangements for sales that had already been completed by delivery and acceptance.

Defendants also rely on Thomason's March 5, 2007, response to Machell's email. Defendants assert that the content of this e-mail reminded Machell of the agreement that American Growers would overpay Gulf Coast for the benefit of Gulf Coast with the express understanding that Gulf Coast would make strawberries available at a predetermined price if and when the market changed. This e-mail was sent after *all* 25 loads were delivered and approved by American Growers. Evening assuming Thomason's e-mail reflects an oral arrangement it had with Gulf Coast, it is not signed by Gulf Coast, the party to be charged. Therefore, as a matter of law, it cannot constitute a modification of the fully completed and executed sales.

American Growers signed every invoice/contract for which Gulf Coast seeks payment. Mr. Batchelor, who testified at his deposition that he signed

some invoices under protest, never made a note of such protest on the invoices themselves. While American Growers contends that "the record is replete with testimony that these were not the proper amounts due," there is no written evidence reflecting that fact or what the "proper amounts" were according to Defendants.

Gulf Coast's PACA Trust Claim

In order to become a perfected PACA trust beneficiary of American Growers, Gulf Coast must demonstrate that the claim arises from the sale of perishable agricultural commodities, the produce must have been purchased and accepted by a commission merchant, dealer or broker, as those terms are defined by PACA,[22] and Gulf Coast must have provided American Growers with written notice of its intent to preserve its rights under PACA.

Here, the sales at issue are for strawberries, a fresh fruits that is within the scope of PACA.[23]  American Growers admitted that it is a commission merchant, dealer or broker operating subject to the PACA provisions, and that it held a PACA license issued by the United States Department of Agriculture.[24] The invoices issued by Gulf Coast contain the language set forth in 7 U.S.C. §499e(c)(4), and therefore provided notice to American Growers of its intent to

---

[22]  7 U.S.C. §499a(b)(5-7).

[23]  7 U.S.C. §499a(b)(4).

[24]  ¶5, Statement.

preserve its rights under PACA.[25]

Glenn Thomason's Personal Liability

PACA requires mandates that American Growers, as PACA Trustee, maintain PACA trust assets in such a manner that these assets are "freely available to satisfy outstanding obligations to sellers of perishable agricultural commodities."[26] Any act or omission inconsistent with this duty to the PACA beneficiaries - including dissipation of PACA trust assets - is unlawful and constitutes a "breach of trust."[27]

This Court has previously found that American Growers is in breach of the PACA trust. When the PACA trust has been breached, other individuals may be held secondarily liable if they had some role in causing American Growers to commit the breach of trust.[28]

Courts considering the issue of who is liable for a breach of trust have relied on the fact that "a corporation can act only through its agents and can thus fulfill fiduciary obligations only through its agents."[29] Thus, the PACA trust

---

[25] 7 U.S.C. §§499e(c)(3) and (4). See In re Country Harvest Buffet Restaurants, Inc., 245 B.R. 650, 653 (9th Cir. BAP 2000).

[26] 7 C.F.R. §46.46(e)(1).

[27] Morris Okun, Inc. v. Harry Zimmerman, Inc., 814 F. Supp. 346, 348-49 (S.D.N.Y. 1993); 7 U.S.C. §499b(4); 7 C.F.R. §46.46(d)(1).

[28] Sunkist Growers, Inc. v. Fisher, 104 F. 3d 280, 283 (9th Cir. 1997).

[29] Morris Okun, Inc., 814 F. Supp. at 349.

imposes liability on a trustee, whether a corporation or a controlling person of that corporation.[30] An individual who is in a position to control the trust assets and who does not do so has breached a fiduciary duty and is personally liable under PACA.[31] The Sunkist Court specifically held that:

> [A] PACA trust in effect imposes liability on a trustee, whether a corporation or a controlling person of that corporation, who uses the trust assets for any purpose other than repayment of the supplier.[32]

In fact, the Morris Okun Court succinctly summarized the law in this area as follows:

> PACA establishes a statutory trust for the benefit of sellers and suppliers. This trust arises from the moment perishable goods are delivered by the seller. An individual who is in a position to control the trust assets and who does not preserve them for the beneficiaries has breached a fiduciary duty, and is personally liable for that tortious act. This legal framework is to be distinguished from piercing the veil doctrine, where the corporate form is disregarded because the individual has either committed a fraud, or because the corporation is a "shell" being used by the individual shareholders to advance their own purely personal rather than corporate ends. (citations omitted). We find persuasive the reasoning holding a fiduciary liable for (any) breach of trust under PACA.[33]

---

[30] Id., at 348.

[31] Id. at 348. See also Goldman-Hayden Co. v. Fresh Source Produce, 27 F. Supp. 2d 723 (N.D. Tex. 1998); Sunkist Growers v. Fisher, 104 F.3d 280 (9th Cir. 1997); Shepard v. K.B. Fruit & Vegetables, 868 F.Supp. 703 (E.D. Pa. 1994); Mid-Valley Produce Corp. v. 4-XXX Produce Corp., 819 F.Supp. 209 (E.D.N.Y. 1993)

[32] Sunkist at 283 (emphasis added).

[33] Morris Okun, 814 F. Supp. at 348 (emphasis added).

Since the Morris Okun decision, numerous courts have addressed the issue of the corporate trustee's liability, and have uniformly held both the company and the individuals in control of the corporation liable to the unpaid produce suppliers.[34]

Here, it is undisputed that Glenn Thomason is the President and Chief Executive Officer of American Growers, and was the only person in a position to control the PACA trust assets of American Growers.[35]  Specifically, Glenn Thomason admitted that he had exclusive control to:  buy and sell Produce on American Growers' behalf; manage and maintain the books and records for American Growers; and decide which produce creditors would receive payment.[36]  This failure to direct American Growers to satisfy its duties under PACA to tender prompt payment in full and to maintain the trust for the benefit of Gulf Coast and other PACA Trust beneficiaries constitutes a breach of Glenn Thomason's fiduciary duty, and renders him personally liable, as a matter of law, on Count VI of Plaintiff's Complaint.

American Growers asserts that summary judgment is inappropriate because genuine issues of material fact exist as to whether the invoices were

---

[34] See, Shepard, 868 F. Supp. at 704-05 (holding principals liable for deficiency in trust assets); Mid-Valley, 819 F. Supp. at 211-12 (company and its president held liable for breach of trust).

[35] American Growers Response to Interrogatories 3, 4 and 5; Batchelor Deposition 7:16-:21; Complaint ¶3b; Answer ¶3.

[36] Id.

signed under protest. Batchelor stated in his deposition that he only signed the invoices because "[i]f I wanted to keep receiving berries, I needed to sign [the invoices]."[37] Gulf Coast denies ever telling Batchelor that he would have to sign the invoices or he would not receive more berries.[38] The Court cannot resolve conflicting issues of fact on a summary judgment motion but this issue has recently been rendered moot by the Court's denial of Defendants' motion to amend their affirmative defenses to add the defense of duress. Therefore, in concurrence with Defendants' counsel statement at the hearing, "if it weren't for the defense of duress and protest, we would have, on our best day, offsetting judgments,"[39] it is hereby

ORDERED AND ADJUDGED that Plaintiff's Motion For Summary Judgment [DE 86] is GRANTED in part, DENIED in part, and RESERVED in part. Based on the findings above and those made in the Order granting Plaintiff's Renewed Motion For Preliminary Injunction [DE 152], the Court concludes as follows:

Summary Judgment is granted in Plaintiff's favor as to Count I: Gulf Coast is a PACA trust beneficiary of American Growers with a valid PACA trust

---

[37] Batchelor Depo. 59-60.

[38] Machell Depo. 121-122.

[39] Transcript at 97. The Court notes that Defendants have moved for reconsideration of the motion to amend their affirmative defenses. If the motion is granted, this issue may have to be revisited.

claim in the amount of $439,915.00, plus interest from the date each invoice became past due.

Count II seeks enforcement of payment from PACA Trust Assets against American Growers. Count IV seeks an order directing American Growers to immediately pay Gulf Coast $439,915.00, plus interest from the date each invoice became past due. The Court cannot grant this request. Immediate payment of only part of the trust solely to accommodate a beneficiary's singular interest is inappropriate because the statutory trust exists for the benefit of all unpaid produce suppliers. *See* 7 U.S.C.A. § 499e(c)(2). All unpaid sellers having a bona fide claim are entitled to its pro rata share. 7 U.S.C.A. § 499e(c)(3); *Frio Ice, S.A. v. Sunfruit, Inc.*, 918 F.2d 154, 159 (11th Cir. 1990).

Count V seeks an Order entering judgment in favor of Plaintiff and against Defendants in the amount of $439,915.00, plus interest from the date each invoice became past due. The Court will reserve ruling on this claim for relief pending the outcome of the trial on the remaining counts of the Complaint and Counterclaim.

Count VI seeks an Order entering judgment in favor of Plaintiff and against Glenn Thomason in the amount of $439,915.00 plus interest from the date each invoice became past due.

Count I of the Counterclaim seeks enforcement of a verbal agreement for the purchase of strawberries, and Count III of the Counterclaim seeks damages based upon a theory of promissory estoppel. The Court will not grant

summary judgment in Plaintiff's favor as to these two counterclaims because there are genuine issues of material fact that remain for trial on these claims. While the alleged oral agreements are inadequate to undo the written contracts, American Growers will be given an opportunity to present its counterclaims at trial to see if it can offset the amount owed to Gulf Coast. As defense counsel stated, any success on the counterclaims will merely offset Gulf Coast's judgment. The Court will reserve ruling on Plaintiff's motion for costs, attorneys' fees and punitive damages.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 31st day of March, 2010.

KENNETH A. MARRA
United States District Judge

copies to:
All counsel of record
Glenn Thomason, pro se